IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:19-CR-260-3 |
| v. | Hon. T.S. Ellis, III |
| FREDY FABIAN ALFARO,<br>a/k/a "TITO," | Sentencing: November 6, 2020 |
| *Defendant*. | |

## GOVERNMENT'S POSITION ON SENTENCING

The defendant, Fredy Fabian Alfaro, comes before the Court for sentencing after pleading guilty to his role in a marijuana trafficking conspiracy that ultimately resulted in the murder of Michael Cooker. The United States has no objection to the Probation Officer's calculations of the defendant's Guidelines of 60 months for Count 1 and life imprisonment for Count 2, as set forth in paragraphs 67–94 and Part D the Presentence Investigation Report ("PSR") (ECF No. 130). Pursuant to the plea agreement and Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Court may impose a total sentence of no more than 24 years of imprisonment. For the reasons set forth herein, the United States respectfully submits that a sentence of 24 years is appropriate in this case.

## BACKGROUND

On April 18, 2018, at approximately 6:48 a.m., in Fairfax County, Virginia, a passerby called 911 to report the discovery of Michael Cooker's deceased body on the side of the road. PSR ¶ 23. Upon arrival, law enforcement found that Cooker had been shot multiple times in the head. A homicide investigation was immediately initiated by the Fairfax County Police Department.

The investigation ultimately revealed that Cooker's murder stemmed from a dispute in connection with the marijuana trafficking operation he ran with the defendant. PSR ¶ 24. At the time of Cooker's death, he had known the defendant and co-defendant Jimmie Marcel McCray for at least one year. Beginning around 2018, the defendant and Cooker entered into a business venture together, the primary purpose of which was the shipment of marijuana from California to Virginia. PSR ¶¶ 15, 49. Between February and April of 2018, the defendant and Cooker went to California together on two occasions. PSR ¶¶ 16, 40. Cooker previously lived in California for several years and had connections to individuals involved in the distribution of marijuana. While the defendant had more money to fund the operation than Cooker, both Cooker and the defendant knew people in Virginia who would purchase the marijuana from them. PSR ¶ 34.

At some point after they began working together, the defendant and Cooker began fighting about money. According to multiple witnesses, the defendant believed that Cooker was mishandling the proceeds of the operation and was upset that Cooker was spending money on drugs for personal use instead of putting it back into the marijuana business. PSR ¶¶ 16, 38, 40. The defendant told a mutual friend of his and Cooker's that the defendant was planning to cut Cooker out of the business. PSR ¶ 39. Evidence suggests that both the defendant and Cooker sought to undercut one another during the course of sales to potential customers. PSR ¶ 34. On April 15, 2018, Cooker flew home to Virginia while the defendant remained in California. PSR ¶ 17. Upon his return, Cooker said that the defendant, who he referred to as his "business partner," was ripping him off by several thousand dollars. PSR ¶¶ 25, 38.

On the night of April 16, 2018, co-defendant Jimmie McCray and Witness One ("W-1") went to Cooker's apartment in Reston, Virginia. PSR ¶ 20. During that time, W-1 saw Cooker give McCray a silver revolver, which the W-1 assumed Cooker traded McCray in exchange for drugs.

2

*Id.* McCray and W-1 then left Cooker's apartment and returned to the W-1's house where McCray showed the revolver to Forbes. *Id*.

At approximately 10:30 p.m., about eight hours before Cooker's murder, McCray and W-1 again stopped by Cooker's apartment. PSR ¶ 21. Co-defendant Forbes also was present. *Id*. They all discussed conducting a robbery in Maryland of an acquaintance of the defendant. *Id*. Around this same time, Cooker placed numerous unanswered calls to the defendant's cell phone. PSR ¶ 18. The defendant sent Cooker a text that read, "Sorry, I can't talk right now." *Id.* Cooker proceeded to make outgoing unanswered phone calls to the defendant's cell phone. *Id*. Cooker then sent the defendant the following series of text messages between 10:46 p.m. and 11:45 p.m.:

> "You got some real issues brah"
> "I showed u nothing but love every step of the way and you betrayed me"
> "Your liar and a straight up lower and u ain't ever gonna be shit"
> "U think I didn't see it shitty character this whole time"
> "Thnx for the stacks bitch"
> "*Your shitty character"
> "Btw I'm sueing u"
> "Actuly nevermind hard to sue someone who ain't got shit"
> "Have fun in jail"
> "U don't even realize how many people you have inconvenienced with your retard Behavior"
> "U lied to me your friends my friends and to my family"
> "You got carried away and. Now u want to blame everyone else"
> "Doesn't get much more selfish than that"

Later that night, McCray and W-1 left Cooker's apartment to conduct a drug deal. PSR ¶ 32. During the drive to the drug deal, at approximately 4:37 a.m., the defendant called McCray in a conversation that lasted over nine minutes. PSR ¶¶ 19, 36, 46. During that call, Alfaro offered McCray remuneration in exchange for harming Cooker. PSR ¶¶ 19, 36, 56. McCray then placed a call to the defendant that lasted for over four minutes that ended at 4:53 a.m. PSR ¶ 19. At the end of the calls, McCray told W-1 that, "We're not going to go to Maryland. We're going to beat him

3

up." PSR ¶¶ 21, 46. W-1 asked McCray why he was going to beat Cooker up and McCray responded that it was for a friend. PSR ¶ 21. Almost immediately, McCray called Forbes. PSR ¶ 19. Between 4:53 a.m. and 5:05 a.m. on April 18, 2018, McCray called Forbes a total of six times. *Id*. At 5:29 a.m., McCray called Forbes and they spoke for over two minutes. *Id.* Five voice calls took place between those numbers from 5:33 a.m. to 6:05 a.m. *Id.*

McCray and W-1 returned to Cooker's apartment after the drug transaction. PSR ¶ 21. McCray, Forbes, Cooker, and W-1 left Cooker's apartment sometime before 6:00 a.m. *Id*. McCray and W-1 rode in W-1's car while Cooker rode with Forbes who was driving a car rented by W-1. *Id*. The two vehicles traveled on Pleasant Valley Road until McCray turned onto a cul-de-sac and parked. *Id.* Forbes parked the rental car next to McCray. *Id.* McCray and Forbes exited their vehicles and walked to the back of W-1's car. *Id.* McCray removed the revolver from the back of W-1's vehicle and gave it to Forbes. PSR ¶¶ 21. After returning to their vehicles, McCray and W-1 exited the cul-de-sac and went right while Cooker and Forbes turned left. PSR ¶ 21. At approximately 6:35 a.m., Forbes shot Cooker twice in the head with a Smith & Wesson Military and Police Model, .38 Special revolver, killing him. PSR ¶¶ 23. 57.

At approximately 6:48 a.m., a passerby discovered Cooker's dead body on the side of Colchester Road. PSR ¶ 23. The location where Cooker was found was approximately 20 minutes from the cul-de-sac by car. According to Witness Two's ("W-2") statement to law enforcement, the defendant called W-2 the same day of Cooker's death and told W-2 Cooker had been shot. PSR ¶ 35. Also according to W-2, the defendant was crying and said that he did not mean it and that it was not supposed to happen. *Id*. W-2 told law enforcement that prior to Cooker's death, the defendant asked W-2 to rob Cooker and beat him up, but that the defendant did not ask W-2 to kill Cooker. *Id.* W-2 also told law enforcement that McCray told W-2 that the defendant offered to pay

4

McCray in exchange for physically harming Cooker. PSR ¶¶ 36. On April 21, 2018, the defendant sent $400 to W-1 via MoneyGram for W-1 to provide to McCray, as agreed on during the defendant's and McCray's phone calls the morning of Cooker's murder.

Five days after the murder, on April 23, 2018, Forbes was arrested in a hotel in Prince William County, Virginia, pursuant to an arrest warrant obtained as part of a Loudoun County Sheriff's Office investigation into a separate shooting Forbes had committed. PSR ¶ 30. A search warrant was executed on the hotel room and recovered a Smith and Wesson Military and Police Model, .38 Special revolver submerged in the toilet tank. *Id.* The Commonwealth of Virginia Department of Forensic Science microscopically analyzed the revolver and the two bullets from the Cooker homicide and determined that the bullets were fired from the revolver found in Forbes's hotel room. *Id.*

The defendant was arrested on April 25, 2019, in connection with a criminal complaint charging him and co-defendants Forbes and McCray with Murder in the Course of Drug Trafficking, in violation of 18 U.S.C. § 924(j)(1). PSR ¶¶ 1–2. He has been in federal custody since that time. PSR ¶ 2. On August 29, 2019, a federal grand jury returned a four-count indictment charging Count 1: Conspiracy to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count 2: Use of a Firearm in Connection with Conspiracy to Distribute Marijuana Resulting in Death, in violation of 18 U.S.C. § 924(c) and (j)(1); and Counts 3 and 4: Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. § 922(g)(1). PSR ¶ 3. The defendant was named in Counts 1 and 2. *Id*.

On January 15, 2020, the government notified the Court that it did not intend to seek the death penalty against the defendant. PSR ¶ 4. The defendant pleaded guilty to Counts 1 and 2 on March 18, 2020. PSR ¶ 5. The plea was accepted pursuant to Rule 11(c)(3)(A) of the Federal Rules

of Criminal Procedure. PSR ¶¶ 7–8. Pursuant to the agreement, the Court may impose a sentence of no more than 24 years' imprisonment. *Id*.

## SENTENCING ANALYSIS

### I.     The Law Governing Sentencing

A court must consult both the Sentencing Guidelines ("USSG") and the sentencing factors in 18 U.S.C. § 3553(a) to determine a defendant's appropriate sentence. Although the Sentencing Guidelines are advisory, district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). Under the required procedures, a "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).

Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Paragraph 2 lists four purposes for a sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition to the purposes of sentencing listed in Section 3553(a)(2), a sentencing court must also consider: (1) the nature of the offense and the defendant's history and characteristics; (2) the kinds of sentences legally available; (3) the advisory sentencing range provided by the Sentencing Guidelines; (4)

any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities; and (6) the need for restitution. 18 U.S.C. § 3553(a).

## II. Guidelines Calculation

Counts 1 and 2 are grouped together for calculation purposes. PSR ¶ 68. The base offense level for a violation of 18 U.S.C. § 924(j)(1) is 43, pursuant to USSG § 2A1.1. PSR ¶ 69. The government concurs with the Probation Officer's determination that the defendant's criminal history score is eight, leading to a criminal history category of IV. PSR ¶¶ 80–94. The defendant's total offense level of 43 and criminal history category IV yields an advisory Guidelines range of 60 months for Count 1 and life in prison for Count 2. PSR Part D.

## III. Section 3553(a) Analysis

The nature of the defendant's crime is extremely serious. Drugs and violent crime have long gone hand-in-hand. Unsurprisingly, law enforcement in the Washington, D.C. metropolitan area reports that recently more homicides have been tied to drugs than the usual neighborhood disputes.[1] Likewise, firearms in the wrong individuals' hands pose a significant danger and risk to community safety. In 2017, one year prior to the defendant's crimes, there were 105 gun fatalities every day and 14,542 homicides by firearm in the country—more than 42 per day.[2]

The defendant's conduct in this case perfectly encapsulates this dangerous problem and the background cited above is important to consider with respect to the defendant's criminal conduct. This case involved drugs, guns, and greed. The defendant entered into a drug trafficking business

---

[1] Lorenzo Hall, *Police: More DC Murders Linked To Drug Deals During Pandemic*, WUSA9 (May 11, 2020), https://www.wusa9.com/article/news/crime/police-more-dc-murders-linked-to-drug-deals-during-pandemic/65-0e52d85d-80ce-4f40-886b-a2bc42a12d42.

[2] *Reducing Gun Violence: What Works and What Can be Done Now*, Police Executive Research Forum, at 1, 5, https://www.policeforum.org/assets/reducinggunviolence.pdf.

7

with the victim in early 2018 and, at the time of Michael Cooker's death, it was not going well. The defendant was frustrated with Cooker and his handling of their business earnings. Instead of reinvesting the money he made from the shipment of marijuana from California to this District, Michael Cooker spent it on drugs for personal use and otherwise mishandled it. The defendant told friends not to pay Cooker for the drugs Cooker sold them. He also told friends that he was going to cut Cooker out of the business completely. The defendant ultimately told co-defendant McCray that he would pay McCray to physically harm Cooker. But that was not the first offer the defendant made to have Cooker hurt. He had also asked a mutual acquaintance located in Virginia to rob Cooker and beat him up.

Cooker clearly had issues with drug abuse and witnesses report that his behavior became increasingly erratic prior to his murder. The defendant knew this. And while the defendant did not pull the trigger to end Cooker's life, his conduct leading up to the shooting leaves no question that the circumstances of Cooker's death could have been avoided if not for the defendant's involvement and direction. He chose to engage another person who he knew would be willing to harm the victim on the defendant's behalf. He did so deliberately and carefully and offered a sum of money to McCray in exchange for his help. After two phone conversations with McCray, the plan was arranged and, later that morning, Forbes shot and killed Cooker. The defendant then did send $400 to W-1 to provide to McCray in accordance with their arrangement. The serious nature of the offense—resulting in the loss of life—justifies a sentence of 24 years' imprisonment.

Likewise, the fact that Cooker was murdered in connection with a cross-country marijuana trafficking operation further justifies the maximum sentence in that it evinces the need to promote respect for the rule of law. The defendant, as well as the victim, were engaged in shipping boxes of marijuana from California to Virginia for distribution. The defendant was so intent on

succeeding in his illegal operation that he was willing to pay someone to inflict bodily harm on his business partner in an effort to protect the business. The defendant's operation unfortunately is not unique nor is the violence that came from it. A sentence of 24 years' imprisonment will serve the joint goal of deterring others from engaging in similar conduct and protecting the public from the defendant and those inclined to follow in his footsteps.

The defendant engaged in this trafficking scheme without any regard for the consequences to the community in general or, more specifically, to the victim's family. Cooker's mother, Mrs. Ann Cooper, has been present for each proceeding in this case. In her victim impact statement, she recalled how the pain of losing her son was so intense that sometimes she could barely breathe. Due to the violent nature of her son's death, she now suffers from post-traumatic stress disorder for which she is receiving treatment. Mrs. Cooper has shown tremendous compassion for the men responsible for her son's death while at the same time acknowledging the shocking cruelty with which they treated him. Mrs. Cooper said that living in a world without her son Michael is her life sentence.

The senseless nature of Cooker's death, as well as the defendant's criminal history, reflects the need for a serious sentence. The defendant has a history of firearm offenses (PSR ¶ 83), drug offenses (PSR ¶¶ 87–88, 91), and incredibly violent behavior against his own sister (PSR ¶ 90). In light of these circumstances, including the seriousness of the offense and the need to provide deterrence and to protect the public, the government respectfully requests the Court impose the greatest sentence available.

## CONCLUSION

For the reasons stated herein, the United States submits that a sentence of imprisonment of 24 years is sufficient but not greater than necessary in this case.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

               /s/
Michael P. Ben'Ary
Marc J. Birnbaum
Assistant United States Attorneys
Rachael C. Tucker
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Fax: 703-299-3982
Emails: michael.benary@usdoj.gov
marc.birnbaum@usdoj.gov
rachael.tucker2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of October 2020, I electronically filed the foregoing using the CM/ECF system, which will automatically send a notification of such filing to all counsel of record.

                                                             /s/
                                          Rachael C. Tucker
                                          Special Assistant United States Attorney
                                          United States Attorney's Office
                                          2100 Jamieson Avenue
                                          Alexandria, Virginia 22314
                                          Phone: 703-299-3700
                                          Fax: 703-299-3982
                                          Email: rachael.tucker2@usdoj.gov